UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
1:19-CV-00874-NCT-LPA

| | |
|---|---|
| COUNTY OF MOORE )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>RANDY ACRES and SOEK YIE )<br>PHAN, )<br>)<br>    Defendants. ) | **REPLY BRIEF IN SUPPORT OF DEFENDANTS' AMENDED MOTION TO DISMISS THE AMENDED COMPLAINT** |

Defendants Randy Acres and Soek Yie Phan ("Defendants"), by and through their undersigned counsel, respectfully submit this Reply Brief in Support of Defendants' Amended Motion to Dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## INTRODUCTION

Defendants agree with Plaintiff Moore County (the "County") that this Court must accept as true the well-pleaded allegations of Plaintiff's lawsuit.[1] The problem for the County is that its Amended Complaint does not match the legal arguments it now makes in its Response. Additionally, the arguments Plaintiff makes in its Response are not supported by applicable law. For all of these reasons, the Court should find that it has jurisdiction over the Plaintiff's case and dismiss.

The Amended Complaint filed by the County seeks a declaration "**pursuant to its power of eminent domain**" that the County enjoys property rights in the form of a twenty-foot surface

---

[1] While not acknowledged in Plaintiff's Response, in other pleadings before this Court, the Plaintiff has acknowledged that a fence previously existed in the now disputed area – without any objection at all from Plaintiff. Moreover, the current fence, like the previous fence, is a one-sided fence. That is to say, it does not prevent access to the buried utilities, and never has.

1

easement on Defendants' property. [Amend. Compl. ¶ 40]. The entire lawsuit is premised on Plaintiff's claim that it is "the grantee and successor-in-interest to water and sewer easements created more than fifty years ago ***through exercise of eminent domain*** by the Pinehurst Water and Sanitary Company, Inc. and Regional Investments of Moore, Inc." [Doc. 14 p. 3 (emphasis added)]. As acknowledged by Plaintiff, this assertion is simply not true.

The Amended Complaint acknowledges that no compensation was ever paid for any <u>taking</u> and there was no formal condemnation filing ever made against Defendants' property. [Amend. Compl. ¶ 11]. Plaintiff's Response brief confirms facts that defeat its claim:

- "Amended Complaint alleges that the County's predecessors installed the water and sewer lines in the 1940s and 1960s and have maintained them ever since; these facts, if proven, would establish that the County has an easement to maintain the water and sewer lines, ***regardless of statutory formalities***." [Doc 14 p. 2 (emphasis added)].
- "Defendants argue that the County could not have an easement on Defendant's property because it never engaged in formal condemnation. (Doc. 4 at 4-5). No so: a government can exercise eminent domain without formal proceedings. *See, e.g., City of Charlotte v. Spratt*, 263 N.C. 656, 662-63, 140 S.E.2d 341, 346 (1965) (noting that property may be "taken in fact . . . even though no formal exercise of the power of eminent domain has been attempted"). [Doc. 14 p. 7].
- "Multiple cases have recognized that the placement of water and sewer lines under private property creates an easement even if no condemnation proceedings occur and the easement is never recorded." [Doc. 14 p. 7].

2

- "[T]hese lines – which the County has maintained for decades and are apparent from the surface due to the manhole (*see id.* ¶¶7, 39) – created an easement on Defendants' property ***even without formal condemnation***." [Doc. 14 p. 8 (emphasis added)].

Entirely missing the point, the County argues that a "taking" occurred while, at the same time, admitting that no condemnation ever took place in this case. Without a proper condemnation proceeding, and the payment of just compensation, Plaintiff's "well-pleaded" claim for an easement obtained pursuant to the law of eminent domain fails as a matter of law. Plaintiff's argument that a "taking" is the same as a lawful easement is not supported by the law. Without a proper claim for an easement obtained via eminent domain, Plaintiff's remaining claims for injunctive relief and encroachment likewise fail as a matter of law.

## ARGUMENT

### I. PLAINTIFF'S SURFACE EASEMENT CLAIM VIA EMINENT DOMAIN FAILS AS A MATTER OF LAW

The Amended Complaint filed by the County seeks a declaration "**pursuant to its power of eminent domain**" that the County enjoys property rights in the form of a twenty-foot surface easement on Defendants' property. [Amend. Compl. ¶ 40]. Indeed, Plaintiff's brief confirms that the property claim is "based upon the exercise of eminent domain" by Plaintiff's predecessors-in-interest (purportedly private companies). [*See, e.g.* Doc. 13 p. 7]. Plaintiff does not enjoy any rights pursuant to eminent domain. Plaintiff acknowledges that no formal condemnation procedures were ever filed in this case. [Am. Compl. ¶¶ 9 and 11-14]. Likewise, Defendants acknowledge that no compensation was ever paid. *Id*. Plaintiff cannot assert condemnation rights pursuant to the Uniform Declaratory Judgment Act without any recorded documents or written documents establishing the taking of property rights via condemnation.

3

Plaintiff's claim for declaratory relief pursuant to its power of eminent domain fails as a matter of law.

Plaintiff's opposition brief misinterprets the law of eminent domain and confuses the analysis for a property taking made pursuant to eminent domain procedures as opposed to claims made by a property owner under the law of inverse condemnation. Plaintiff's confusion leads to an improper assertion of law that the "government can exercise eminent domain without formal proceedings." [Doc. 14 p. 7]. This is simply not true. Plaintiff cites a number of "<u>inverse condemnation</u>" cases in support of its incorrect principle of law. In so doing, Plaintiff focuses on the word "taking" without recognizing what must be done under the law of eminent domain to create property rights for the government, *i.e.* the filing of a condemnation proceeding and the payment of just compensation. [Doc. 14 p. 7]. Plaintiff cites *City of Charlotte v. Spratt* in support of its misguided argument that a government can exercise eminent domain powers without having to file a formal proceeding. However, the language from the *Spratt* opinion cited by Plaintiff involves the Court's analysis of the law of <u>inverse condemnation</u>:

> Respondent cites and relies upon decisions in actions for "inverse condemnation," a term often used to designate "a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the government defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency."

A close reading of *Spratt*, however, undermines Plaintiff's central argument and makes clear that the government must follow the legal requirements of an eminent domain proceeding in order to claim property rights. In order to lawfully take property pursuant to eminent domain, the government must file a petition and that petition "must contain a description of the real estate" which the government seeks to acquire. *City of Charlotte v. Spratt*, 263 N.C. 656, 662 (1965). Moreover, the sum of just compensation will be determined at the time the "proceeding

4

Case 1:19-cv-00874-NCT-LPA Document 16 Filed 10/29/19 Page 4 of 12

is begun." *Id.* (internal quotations omitted). In fact, the government in *Spratt* did not even attempt to condemn a flight easement over the property owner, nor did it claim such an easement. Instead, the property owner filed a claim of inverse condemnation based on the government's "taking" of property without filing condemnation proceedings. It is well settled in North Carolina that a claim of condemnation is subject to dismissal when a government body fails to follow the statutory guidelines for the taking of property rights in the form of an easement. *Durham & N. R. Co. v. Richmond & D. R. Co.*, 106 N.C. 16, 25, 10 S.E. 1041, 1042-43 (1890).

Plaintiff makes the same mistake in citing the recent United States Supreme Court case of *Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2172 (2019). Plaintiff notes that the Court in *Knick* stated "that a 'taking' can occur under the United States Constitution regardless" of whether formal condemnation proceedings are initiated. The Court in *Knick* analyzed the law of <u>inverse condemnation</u> to determine whether the property owner had a valid claim for an unconstitutional taking. The *Knick* case does not support Plaintiff's claim that the government can lawfully exercise its eminent domain powers without having to file formal proceedings. To be clear, *Knick* does not stand for the proposition that a "taking" is the equivalent of a lawful easement.

Indeed the opposite is true. In order for the County to lawfully claim property rights pursuant to its power of eminent domain, it must follow the statutory framework set forth in Article 3, Chapter 40A regarding condemnation by Public Condemnors. Moreover, Public Condemnors are required to provide notice of action to all landowners not less than 30 days prior to the filing of complaint for condemnation. *See* N.C.G.S. § 40A-40. Additionally, Public Condemnors are required to file a declaration of taking declaring to institute a condemnation action. *See* N.C.G.S. § 40A-41. Plaintiff has failed to allege that it followed the condemnation

proceedings under state law and, in fact, has admitted that no such formal condemnation proceeding was ever filed in this case. [Amend. Compl. ¶¶ 9 and 11]. As a result, Plaintiff's declaratory judgment claim of surface easement rights pursuant to the power of eminent domain fails as a matter of law.

The law of eminent domain also requires the government to deposit with the clerk of court the sum of money estimated by the condemnor to be just compensation for the taking. *See* N.C.G.S. § 40A-41. No such payment was ever made in this case because no formal condemnation proceeding was ever initiated.

While a "taking" may have occurred without the filing of formal condemnation proceedings, it does not mean that the government lawfully obtained any property rights. Indeed, "when the government condemns property for public use, it provides the landowner a forum for seeking just compensation as is required by the Constitution." *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 693 (1999). No such forum was ever provided in this case because no formal condemnation proceedings were ever instituted (for any easement rights) – by the County or its predecessors in interest. [Amend. Compl. ¶¶ 9 and 11]. As such, Plaintiff's claim for an easement obtained by condemnation fails as a matter of law.

II. **PLAINTIFF'S CLAIM FOR DELCARATORY RELIEF OF A SURFACE EASEMENT OVER UNRECORDED UTILITY LINES MUST BE DISMISSED FOR FAILURE TO INCLUDE ALL PROPER PARTIES**

Moreover, the requested relief in the First Claim for Declaratory Relief would affect all property owners in Moore County in which there are unrecorded utility lines located on their property as claimed by Moore County. Pursuant to N.C.G.S. § 1-260, when Declaratory Relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration.

6

Plaintiff is seeking a declaration in this case against the test-case defendants to use as precedent against other landowners that have unrecorded utility lines running across their property, many of whom are likely unaware to the unrecorded lines or the County's recent assertion of surface easement rights over those lines. Plaintiff has already alleged in this case that, in connection with the fence construction, Defendants "refuse to accept well established legal precedence regarding the County's rights to the water main, sewer main, manhole, and easement areas." [Orig. Compl. ¶ 30].

Unless and until Moore County identifies each and every property owner that have unrecorded utility lines on their property, this case must be dismissed. Pursuant to N.C.G.S. § 1-257, the Court may in its discretion refuse to render or enter a declaratory judgment in this case.

### III. PLAINTIFF'S CLAIM FOR DELCARATORY RELIEF THAT THE EXCLUSIVE REMEDY IN RESPONSE TO ANY TAKING IS AN INVERSE CONDEMNATION UNDER STATE LAW FAILS AS A MATTER OF LAW

The Amended Complaint also seeks a declaratory judgment that the exclusive remedy of Defendants to any claims for compensation is an action of inverse condemnation under state law. This claim fails as a matter of law.

Property rights are protected under 42 U.S.C. § 1983. A person who has suffered a purported taking at the hands of a local government may bring a claim in federal court under 42 U.S.C. § 1983 to obtain just compensation. *See Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2172 (2019). Plaintiff Moore County seeks to limit the unique constitutional rights of Defendants to a state law claim of inverse condemnation. In so doing, Plaintiff seeks declaratory relief "that the exclusive remedy of Defendants to any claims for compensation for the taking" of easements rights is an action of inverse condemnation under state law pursuant to N.C. Gen. Stat. §40A-51. [Am. Compl. ¶¶ 11 and 41]

In *Knick*, the United States Supreme Court granted certiorari to reconsider the holding of *Williamson County* that property owners must seek just compensation under state law in state court before bring a federal takings claim under 42 U.S.C. § 1983. *Id.* at 2169. The Supreme Court overruled the holding in *Williamson County* thereby allowing property owners to bring a claim under 42 U.S.C. *§ 1983* upon the taking of property without just compensation by a local government. *Id.* at 2179. "The fact that the State have provided a property owner with a procedure that my subsequently result in just compensation cannot deprive the owner of his *Fifth Amendment* right to compensation under the Constitution, leaving only the state law right. And that is the key because it is the existence of the *Fifth Amendment* right that allows the owner to proceed directly to federal court under § 1983." *Id.* at 2171. As such, Plaintiff's claim for declaratory relief on the issue of inverse condemnation fails as a matter of law.

IV. **THE INTERFERENCE WITH EASEMENT CLAIM FAILS AS A MATTER OF LAW**

As discussed above, Plaintiff is seeking an Order from the Court declaring that the County enjoys the rights of ownership, pursuant to its power of eminent domain," of a surface easement measuring ten (10) feet on each side of the water main and the sewer main. [Amend. Compl. ¶ 40]. The Third Claim for Relief is for interference with use and enjoyment of the 20 foot easement claimed by the County via condemnation. Without any formal condemnation filing or the payment of compensation, this claim fails as a matter of law.

As a prerequisite to success on its claim of encroachment, Plaintiff must establish its property right pursuant to eminent domain to the twenty-foot surface easement running along Defendant's property. If the eminent domain claim runs afoul of Defendants' constitutional property rights, the entire case fails.

In its Response, Plaintiff cites *Central Carolina Developers, Inc. v. Moore Water and Sewer Authority*, 148 N.C. App. 564, 559 S.E.2d 230 (2002) for the proposition that it took an unrecorded easement of subsurface rights when it placed the utility lines in the ground without formal condemnation. [Doc. 14 p. 8]. Again, Plaintiff misreads *Central Carolina* for this proposition and confuses the term "taking" with the conclusion that the County obtained a legal easement. *Central Carolina* was a case initiated by the property owner for both trespass and inverse condemnation. As acknowledged in its Response brief, this action is not a trespass case. [Doc. 14 p. 6]. Instead, the County seeks to assert surface easement rights, legal property rights, over Defendants' property. While the Court in *Central Carolina* addressed the date of the "taking" in connection with the state law inverse condemnation claim, the Court did not conclude that the government had a legal easement. Instead, the court in *Central Carolina* simply concluded that the date of the "taking" took place outside the state law statute of limitations.

Likewise, Plaintiff cites *Peach v. City of High Point* in support of the proposition that a legally enforceable easement is created when utility lines are placed in the ground, even if no condemnation proceedings were ever filed. [Doc. 14 p. 7]. Again, the *Peach* case does not stand for the proposition of law argued by Plaintiff in its Response brief. The *Peach* case is another inverse condemnation case that analyzes the date of the purported "taking" for purposes of the statute of limitations. The Court analyzed both the old place of utility lines without a recorded easement and the new utility lines in which a recorded easement was obtained from the property owners. The Court does use the words "old easement" in the opinion but the use of that term was properly defined as the claim made by the government[2], not any determination that the

---

[2] "At some point in 1999, defendant approached plaintiff and told them that: their residence was located above part of the old outfall in an easement (the 'old easement'). *See Peach*, 199 N.C. App. at 362.

9

installation of utility lines created a legally enforceable easement. Under North Carolina law, the opposite is true. The government is required to file a condemnation proceeding and pay just compensation to claim a legally enforceable easement.

Plaintiff's attempts to convert the word "taking" into a legally enforceable easement has no merit. In order for Plaintiff to assert a claim for interference with an easement, it must first establish a lawful property right in the form of an easement. The Amended Complaint fails to do so and this claim must be dismissed.

For the foregoing reasons, Defendants request that this Court enter an order dismissing all claims with prejudice.

Respectfully submitted this the 29th day of October, 2019.

GRAEBE HANNA & SULLIVAN, PLLC

/s/ Douglas W. Hanna
Douglas W. Hanna, NCSB #18225
4350 Lassiter at North Hills Avenue, Suite 375
Raleigh, North Carolina 27609
Telephone: 919-863-9091
Facsimile: 919-863-9095
Email: dhanna@ghslawfirm.com
*Counsel for Defendants*

# CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.3(d)

I hereby certify that the Reply Brief in Support of Defendants' Amended Motion to Dismiss the Amended Complaint, excluding the case caption and the certificate of service, is in compliance with Local Rule 7.3(d).

This the 29th day of October, 2019.

/s/ Douglas W. Hanna

Douglas W. Hanna

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that he has this day electronically filed the foregoing **REPLY BRIEF IN SUPPORT OF DEFENDANTS' AMENDED MOTION TO DISMISS THE AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system and served a copy upon all parties to this action as follows:

>James R. Morgan, Jr.
>Mary Craven Adams
>H. Stephen Robinson
>WOMBLE BOND DICKENSON (US) LLP
>One West Fourth Street
>Winston-Salem, NC 27103
>
>Misty Randall Leland
>Moore County Attorney
>Elizabeth Curran O'Brien
>Assistant County Attorney
>P. O. Box 905
>Carthage, NC 28327

This the 29th day of October, 2019.

>GRAEBE HANNA & SULLIVAN, PLLC
>
>/s/ Douglas W. Hanna
>Douglas W. Hanna, NCSB #18225
>4350 Lassiter at North Hills Avenue, Suite 375
>Raleigh, North Carolina 27609
>Telephone: 919-863-9091
>Facsimile: 919-863-9095
>Email: dhanna@ghslawfirm.com
>*Counsel for Defendants*