# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| COUNTY OF MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:19CV874 |
| | ) | |
| RANDY ACRES and SOEK YIE PHAN, | ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff County of Moore's Motion to Remand to Superior Court of Moore County [Doc. #11], Defendants' Amended Motion to Dismiss the Amended Complaint [Doc. #4], and a Motion for Leave to Withdraw as Counsel for Defendants Without Substitution [Doc. #18]. For the reasons explained below, the Motion to Remand is granted in part as to remand and denied in part as to attorney's fees and costs, the Motion to Dismiss is denied as moot without prejudice to refiling in state court, and the Motion to Withdraw is granted.

I.

This action is a dispute over Defendants' alleged encroachment of the County of Moore's ("Moore County" or "the County") alleged easement to access sewer and water mains on Defendants' property ("the Property") in the Village of Pinehurst ("the Village"). A sewer main and manhole and a water main were installed on the Property in 1948 and 1965, respectively. (Am. Compl. ¶ 7 [Doc.

#2].) The corporation that installed the utilities acquired the property by condemnation pursuant to North Carolina General Statute § 40A-3. (Id. ¶ 8.) In 1970, a home was constructed on the Property. (Id.)

In 1993, Moore County Water and Sewer Authority was deeded the water and sewer infrastructure in the Village, including

> any rights of way . . . and easements . . . , including perpetual, alienable, and releasable utility easements and easements for ingress and egress used or to be used in connection with all utility easements, including all such easements necessary for the purpose of constructing, maintaining and operating . . chattels and fixtures used in connection with the collection, storage, purification, treatment and distribution of water, and the collection, transportation, treatment, processing, and disposal of sewage and other waste materials[.]

(Id. ¶ 6; Ex. 1A to Am. Compl.) In 1999, the Water and Sewer Authority deeded the same to Moore County. (Am. Compl. ¶ 6; Ex. 1B to Am. Compl.)

On or about November 2, 2018, Defendants applied to the Village for a fence permit. (Am. Compl. ¶ 20.) They were told that there was a water line easement along the rear property line that belonged to the County and to contact Moore County Public Works to determine the location of the water line and a recommended placement of the fence. (Id. ¶ 21.) Defendants did not contact the County, but their contractor called the utility locate service after which the County marked the location of the water and sewer mains. (Id. ¶ 23.)

Months later, on March 18, 2019, the County first learned that a fence was being installed in the water and sewer easement areas on the Property. (Id. ¶ 24.) That day, a representative from the County met the Village's Public Services

Director, Mike Apke, P.E., at the site and expressed concerns to the contractor about the placement of the fence. (Id. ¶ 25.) Apke observed that the fence post holes were so close to the utility lines that the water main was visible in one of the holes. (Id.) The County asked the contractor to stop work and to have Defendants call the County, and the Public Works Director, Randy Gould, sent Defendant Acres a letter asserting the County's position regarding the location of the fence. (Id.) The County also communicated with Defendants' then-counsel and Defendant Acres himself and advised Defendants not to place the fence in the County's easement areas. (Id. ¶ 26.) In addition, on March 26, 2019, the County's Public Works staff met with Defendant Acres on site and again directed him not to build the fence in the water and sewer easement areas. (Id. ¶ 27.)

Nevertheless, on or about April 29, 2019, Defendants constructed the six-foot, wooden, shadow-box style privacy fence on top of or nearly on top of the sewer and water easement areas and fenced in the sewer and water mains and manhole. (Id. ¶ 28.) On May 24, 2019, the County sent Defendants a letter informing them of the County's position and affording them fourteen days to remove the fence. (Id. ¶ 30.) However, on or about June 11, 2019, instead of removing the fence, Defendants planted numerous six-foot holly trees all along the inside of the fence directly above the water main and in the easement area. (Id. ¶ 31.)

"The fence and plantings prevent adequate access to repair, operate and maintain the manhole, water and sewer mains, and easement." (Id. ¶ 33; see also

3

¶ 28.) The fence also blocks the previously-used rear alleyway access to the lines. (Id.) Now, the only access to the easement area is through the front and side yard of the Property, but heavy trucks and equipment are unable to navigate the area and Defendants will not grant an easement for access. (Id.)

Because "the County has owned, controlled, operated and maintained the manhole, water and sewer mains and easements for more than fifty years" and Defendants "have chosen to disregard the County's rights of ownership to the water main, sewer main, manhole, and easement areas", the County sued Defendants in state court for a judgment

> declaring that the County enjoys the rights of ownership, pursuant to its power of eminent domain, of the manhole, water and sewer mains and the easements, measuring 10 feet on each side of the water main and sewer main [which the County alleges to be well within industry standard], and permanently enjoining Defendants, their successors and assigns from interfering with the easements, and requiring them to immediately remove the fence, plantings, and any other structures and objects from the easements.

(Id. ¶ 40; see also requests for relief ¶ 1.) They also sought a judgment declaring Defendants' exclusive remedy is a now time-barred action for inverse condemnation. (Id. ¶ 41; see also requests for relief ¶ 2.) Related to the declaratory judgments, the County requested a permanent injunction against Defendants and an order that Defendants remove the encroachment from the easements. (Id. ¶¶ 43-51.)

II.

Defendants removed the action on the basis of federal question jurisdiction, because they contend that adjudication of the County's declaratory judgment claim "turn[s] on substantial questions of federal law." (Pet. for Removal ¶¶ 19-24 [Doc. #1].)  "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).  District courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  "[B]y and large", these types of civil actions involve "a cause of action created by federal law". Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005). "[Another] longstanding, if less frequently encountered, variety of federal 'arising under' jurisdiction" exists when "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Id. at 314.

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).  It is "settled law that a case may not be removed to federal court on the basis of a federal

5

defense . . . even if the defense is anticipated in the plaintiff's complaint", id. at 393 (emphasis in original), nor may a counterclaim provide the basis for "arising under" jurisdiction, Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc., 535 U.S. 826, 830-32 (2002).

This "well-pleaded complaint rule operates no differently when the jurisdictional issue is whether a district court possesses subject matter jurisdiction of a declaratory judgment action purporting to raise a federal question." Columbia Gas Transmission Corp. v. Drain, 237 F.3d 366, 370 (2001) ("Columbia Gas II").

> [H]owever, . . . in a declaratory judgment action, the federal right litigated may belong to the declaratory judgment defendant rather than the declaratory judgment plaintiff. Thus, if the declaratory judgment plaintiff is not alleging an affirmative claim arising under federal law against the declaratory judgment defendant, the proper jurisdictional question is whether the complaint alleges a claim arising under federal law that the declaratory judgment defendant could affirmatively bring against the declaratory judgment plaintiff. If the answer to this question is yes, federal question jurisdiction exists.

Id.

Columbia Gas is illustrative. The first time the parties were in federal court for declaratory and injunctive relief over an easement dispute, the Fourth Circuit Court of Appeals found no federal-question jurisdiction. Columbia Gas Transmission Corp. v. Drain, 191 F.3d 552, 553 (4th Cir. 1999) ("Columbia Gas I"). When they returned on the same facts, the court found that there was federal-question jurisdiction. Columbia Gas II, 237 F.3d at 367. The distinctions between the requested declaratory relief proved crucial.

In 1950, Columbia Gas's predecessor-in-interest purchased a right-of-way for an eight-inch gas pipeline under property that Drain's father eventually deeded to her in 1977. Columbia Gas I, 191 F.3d at 553. However, the agreement did not specify the width of the right-of-way. Id. In 1965, after an underground gas transmission pipeline was installed pursuant to the agreement, Drain's father constructed a cement block foundation and a shed six inches from the gas line. Id. Columbia Gas did not object to that structure, nor to other encroachments by nearby property owners elsewhere on the pipeline, for decades. Id. at 553-54. In August 1992, Drain began to install a cement block foundation for a modular home along the company's right-of-way and within seven and one-half feet from the pipeline. Id. at 554. The work was completed by October 1992 without objection. Id. However, in April 1993, Columbia Gas informed Drain that her modular home encroached on its fifty-foot wide easement and later told her that she would have to move the home. Id. When she did not, Columbia Gas brought an action in federal district court for a declaration that, under West Virginia law and federal regulations, it was entitled to a fifty-foot easement pursuant to the agreement and sought injunctions ordering the removal of Drain's home and shed twenty-five feet from the pipeline. Id.

Although Drain did eventually move her home, she answered the complaint and asserted a counterclaim pursuant to 42 U.S.C. § 1983 that a fifty-foot easement would result in an unconstitutional taking of her property. Id. The district court applied West Virginia law to determine the "reasonably necessary"

7

width of the easement, granted Columbia Gas declaratory and injunctive relief, and held there had been no unconstitutional taking of Drain's property. Id.

The Fourth Circuit Court of Appeals vacated the judgment because neither the Natural Gas statutes on which the district court rested jurisdiction nor any other basis provided federal question jurisdiction "over this quintessential state law claim". Id. at 554-55. The district court was instructed to dismiss the complaint and to dismiss Drain's counterclaim without prejudice. Id. at 555, 559.

Less than two weeks after Columbia I was decided, Drain filed her own suit in state court seeking a declaration that Columbia Gas's easement of fifty feet was a taking that deprived her of her right to just compensation for her property and due process under the West Virginia Constitution, which Columbia Gas removed. Columbia Gas II, 237 F.3d at 369. It then filed a separate, second declaratory judgment action in federal court. Id. Although this second complaint was similar in some respects to Columbia Gas's first declaratory judgment action, "the second complaint sought a declaration that 'Drain has not been deprived of property without just compensation and due process under the United States Constitution, amend. XIV.'" Id. Drain moved to dismiss for lack of subject matter jurisdiction, which the district court granted. Id.

The Fourth Circuit Court of Appeals vacated the district court's order after finding that the court now had jurisdiction under 28 U.S.C. § 1331. Id. at 369, 371. Recognizing that the well-pleaded complaint rule still drives the federal jurisdiction question in a declaratory judgment action, the court explained that "if

8

the declaratory judgment plaintiff is not alleging an affirmative claim arising under federal law against the declaratory judgment defendant, the proper jurisdictional question is whether the complaint alleges a claim arising under federal law that the declaratory judgment defendant could affirmatively bring against the declaratory judgment plaintiff." Id. at 370. "Because the complaint at issue does not assert an affirmative cause of action arising under federal law, we must ask whether it seeks declaratory relief on a matter for which Drain could bring a coercive action arising under federal law against Columbia Gas." Id. Indeed, it did. Id. "Specifically, the complaint requests a declaration that Columbia Gas's use of a fifty-foot wide easement on Drain's property is not an unconstitutional taking under the Fourteenth Amendment." Id. Notably, this was "the reverse of" Drain's counterclaim in Columbia Gas I "which undoubtedly arose under federal law." Id. Therefore, "[b]ecause Columbia Gas's complaint in its Second Declaratory Judgment Action [sought] declaratory relief on a matter for which Drain could bring a coercive action against Columbia Gas arising under federal law, . . . the district court possessed subject matter jurisdiction pursuant to § 1331." Id. at 370-71.

More recently, the court was again asked to determine if an easement action arose under federal law. In Pressl v. Appalachian Power Co., 842 F.3d 299, 303 (4th Cir. 2016), plaintiff landowners sought a declaration in state court that the defendant power company did not possess rights under an easement to limit the landowners' construction on their property. The power company removed the action and asserted federal question jurisdiction because "its hypothetical coercive

9

suit, seeking a declaration as to its rights to prevent or regulate construction or an injunction to enforce those rights, would arise under federal law" "because its rights under state law necessarily turn on the construction of its federal license." Id.

The court disagreed and found that the case did not necessarily raise any federal issue. Id. at 303-05. "[A] claim necessarily depends on a question of federal law only when every legal theory supporting the claim requires the resolution of a federal issue" such that "if even one theory for interpreting the flowage easement does not involve interpretation of federal law, the claim does not 'arise under' federal law." Id. at 304 (internal quotations omitted). The court reflected that it had "rejected a similar contention [in Columbia Gas I] that interpretation of an easement necessarily depends on a question of federal law." Id. The Pressl court described the situation in Columbia Gas I: "Because the easement did not explicitly specify the width of the right of way, the court needed to determine what width was 'reasonably necessary' under state law." Id. "[D]etermination of that question is often reached without reference to federal law or regulations"; thus, "the state law easement claim did not necessarily raise issues of federal law." Id. Applying this analysis, the Pressl court found that the issue before it required interpretation of an easement as guided by state law only, and that "28 U.S.C. § 1331 provided no basis for federal jurisdiction over this case." Id. at 304-05.

10

It is clear from these cases that the instant action does not arise under federal law. Moore County seeks a declaration much like Columbia Gas did in its first action against Drain. Despite the presence of sewer and water mains on the Property from 1948 and 1965, respectively, years before the construction of the home on the Property in 1970 and decades before the activity giving rise to this suit, the County and Defendants dispute the width of the County's easement to access those mains. North Carolina law governs that determination. See, e.g., Carolina Power & Light Co. v. Bowman, 51 S.E.2d 191, 194, 195 (N.C. 1949) (addressing the issue of "whether plaintiff's easement acquired by judgment in condemnation proceeding was valid and subsisting as against subsequent purchasers from the original owners of the land" and explaining that "[o]rdinarily the owner of the dominant tenement has a right to the unobstructed use at all times of the subservient land for the exercise of such rights as are necessary or incident to the enjoyment of the easement") & Intermount Distrib., Inc. v. Public Serv. Co. of N.C., Inc., 563 S.E.2d 626, 630 (N.C. Ct. App. 2002) (answering the "only issue before the court [which] was the enforceable width of the easement or right-of-way claimed by [the public service company]" and explaining that "the width of an undefined easement is determined by considering the purpose of the easement and establishing a width necessary to effectuate that purpose"). Just as Columbia Gas's first action against Drain sought a determination that it was entitled to a fifty-foot easement and an injunction ordering Drain to move her home, Moore County seeks a declaration that it is entitled to a twenty-foot

11

easement and an injunction ordering Defendants to remove their encroachment. As was the case in Columbia Gas I, this is a "quintessential state law claim".

Defendants make much of the County's request for a determination that their exclusive remedy is inverse condemnation which the County contends is time-barred. They characterize the requested relief as "a declaration that Defendants are prevented from making a claim under 42 U.S.C. § 1983 for just compensation and/or violation of due process." (Defs.' Resp. in Opp'n at 16 [Doc. #15].) Yet, that is not what Moore County seeks. The County alleges that – in this state action – Defendants could not pursue a trespass action against the County, but could have initiated an action for inverse condemnation were it not time-barred. See Cent. Carolina Developers, Inc. v. Moore Water & Sewer Auth., 559 S.E.2d 230, 232 (N.C. Ct. App. 2002) (finding that the plaintiff landowner had no claim for trespass and that its "exclusive remedy" was "inverse condemnation under G.S. 40A-51"). The Amended Complaint makes no mention of federal law, much less requests a declaration that Defendants cannot bring a § 1983 claim against the County. Defendants correctly recognize that landowners whose property is taken by a local government may bring a § 1983 action in federal court without first proceeding in state court. See Knick v. Township of Scott, Pa., ___ U.S. ___, 139 S. Ct. 2162 (2019). And, in Columbia Gas II, Columbia Gas filed a second declaratory action seeking to head off just that claim; it sought a declaration that its use of the fifty-foot easement was "not an unconstitutional taking under the Fourteenth Amendment", likely in response to Drain's previous counterclaim.

However, this is not Columbia Gas II. The County has not sought a determination of an issue of federal law that Defendants could bring in their own coercive action.

Furthermore, despite Defendants' argument otherwise, for the reasons explained above, nothing here "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities," Grable & Sons Metal Prods., Inc., 545 U.S. at 314. Defendants cite North Carolina v. Alcoa Power Generating, Inc., 853 F.3d 140 (4th Cir. 2017); however, the facts and legal questions there are easily distinguishable. North Carolina filed a declaratory action in state court to quiet title to a portion of the Yadkin River's riverbed. Id. at 146. Alcoa removed the action on the basis that "the issue of navigability for title was a question of federal law arising under the U.S. Constitution." Id. at 145. The Fourth Circuit Court of Appeals agreed and reiterated Supreme Court precedent that "questions of navigability for determining state riverbed title are governed by federal law" and have been "since the founding" and "in cases over the course of more than 150 years." Id. at 148.

The Fourth Circuit's analysis in Columbia Gas I is more helpful. After finding that Columbia Gas's declaratory judgment action was not based on the Natural Gas Pipeline Safety Act or other federal law, the court analyzed whether the state law action necessarily raised a federal issue. 191 F.3d at 557-58. "The only argument that can reasonably be made . . . is that under West Virginia law the width of the easement will be determined by what is 'reasonably necessary,' and a

13

determination of what is 'reasonably necessary' turns on what actions Columbia must take in order to comply with federal safety regulations." Id. at 558. But, "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." Id. The court found "that no disputed question of federal law is a necessary element of [Columbia Gas's] state law claim, the resolution of which plainly turns on interpretation of state common law as to the width of an easement". Id. Ultimately, the same can be said of this case. Because there is no subject matter jurisdiction over the action, it is unnecessary to determine if Defendants' removal was timely.

III.

As part of its Motion to Remand, Moore County requests the Court retain jurisdiction to award costs and reasonable attorney's fees pursuant to 28 U.S.C. § 1447(c). "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). An award is not automatic, though. After all, Congress decided "to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." Martin v. Franklin Capital Corp., 546 U.S. 132, 140 (2004). However, § 1447(c) "recognize[s] the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party". Id. Accordingly, the analysis turns on the reasonableness of the removal. Id. at 141. "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable

14

basis for seeking removal." Id.  A removing party lacks an objectively reasonable basis, for example, when a cursory examination of the complaint "alleging exclusively state [-] law claims for relief" would have revealed a lack of federal jurisdiction, Int'l Legward Grp., Inc. v. Americal Corp., No. 5:10-CV-153-D, 2010 WL 3603784, at *4 (E.D.N.C. Sept. 8, 2010) (alteration in original), or when binding precedent has "squarely held" that the avenue for removal upon which the party relies is foreclosed, Williamsburg Plantation, Inc. v. Bluegreen Corp., No. 4:06CV102, 2007 WL 445289, at *3 (E.D. Va. Feb. 5, 2007).

Moore County argues that "Defendants' rather inscrutable notice of removal . . . evinces a lack of any objectively reasonable basis for removal in this action", as they "cite no authority indicating federal jurisdiction on the facts of this case and make no cogent argument for removal based on existing removal jurisprudence." (Pl.'s Corrected Mem. of Law in Supp. of Mot. to Remand and for Costs and Attorney Fees at 19 [Doc. #13].)

Defendants respond in opposition that they "have established that the coercive claim raised by the County will require the Court to determine whether the alleged taking by the County violated Defendants' constitutional rights to procedural due process and the constitutionally-required payment of just compensation", an "answer [that] will also impact other similarly situated landowners in Moore County." (Defs'. Resp. in Opp'n at 18-19.)  As above, they also argue federal jurisdiction is invoked by the County's request for a declaration that Defendants' exclusive remedy is inverse condemnation. (Id. at 19.)  In

15

addition, they contend there are complex jurisdictional issues here and cite Admiral Insurance Co. v. Abshire, 574 F.3d 267, 280 (5th Cir. 2009), which involved a ninth amended complaint that for the first time included class action allegations and was removed in the face of one relevant circuit opinion that had expressly withheld an opinion on a relevant dispositive issue. (Id.)

The circumstances here show that Defendants had an objectively reasonable basis for removing the action. They interpreted the allegations in the Amended Complaint to seek judicial determination that they could not pursue a takings claim under 42 U.S.C. § 1983 and that such determination would necessarily involve substantial questions of law. Accordingly, Moore County's request for attorney's fees and costs is denied.

IV.

Because the Court lacks jurisdiction over this action, Defendant's Motion to Dismiss is denied as moot without prejudice to refiling in state court.

V.

Defendants have retained new counsel since their initial counsel's Motion to Withdraw, and that motion is granted.

VI.

For the reasons explained in this Memorandum Opinion, IT IS HEREBY ORDERED that Plaintiff County of Moore's Motion to Remand to Superior Court of Moore County [Doc. #11] is GRANTED IN PART AS TO REMAND AND DENIED IN PART AS TO ATTORNEY'S FEES AND COSTS. IT IS FURTHER ORDERED that

Defendants' Amended Motion to Dismiss the Amended Complaint [Doc. #4] is DENIED AS MOOT WITHOUT PREJUDICE TO REFILING IN STATE COURT. IT IS FURTHER ORDERED that the Motion for Leave to Withdraw as Counsel for Defendants Without Substitution [Doc. #18] is GRANTED.

This the 20th day of March, 2020.

<u>/s/ N. Carlton Tilley, Jr.</u>
Senior United States District Judge